# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| N.S., et al., | ) |
|       Plaintiffs, | ) |
| v. | ) Case No. 4:16-CV-00843-BCW |
| KANSAS CITY BOARD OF POLICE COMMISSIONERS, et al., | ) |
|       Defendants. | ) |

## AMENDED PARTIAL ORDER FOR SUMMARY JUDGMENT

The above-captioned matter is before the Court pursuant to a judgment and opinion from the United States Court of Appeals for the Eighth Circuit vacating this Court's order finding Defendant Officer Thompson not entitled to official or qualified immunity. The Eighth Circuit remanded the matter for reconsideration of the Defendants' motion for summary judgment on whether Officer Thompson was entitled to qualified immunity on Count I and/or official immunity on Count III.[1]

Accordingly, before the Court on remand from the Eighth Circuit is Officer Thompson's motion for summary judgment on Plaintiffs' Count I for excessive force in violation of § 1983 and Count III for wrongful death. (Doc. #135). The Court, being duly advised of the premises, and consistent with the Eighth Circuit's opinion, grants Officer Thompson's motion for summary judgment.

---

[1] Because the Eighth Circuit vacated the Court's summary judgment order with respect to Plaintiffs' claims against Officer Thompson only, the Court's order finding the other Defendants entitled to summary judgment on Counts II and III remains in effect. (Doc. #160).

1

## BACKGROUND

Plaintiffs N.S. and Narene James ("Plaintiffs") are family members of Ryan Stokes who, on July 28, 2013, was fatally shot by Defendant Kansas City, Missouri Police ("KCPD") Officer William Thompson ("Officer Thompson"). Plaintiffs allege the following claims: (I) violation of 42 U.S.C. § 1983 against Officer Thompson, in his personal and official capacities, for unconstitutional use of excessive and deadly force; (II) violation of 42 U.S.C. § 1983 against the Kansas City Board of Police Commissioners and its individual members Michael Rader, Leland Shurin, Angela Wasson-Hunt, Alvin Brooks, Sly James, and David Kenner, in their respective official capacities (collectively, "the Board"); Chief of Police Richard Smith, in his official capacity,[2] and Darryl Forte, in his personal capacity, for unconstitutional policies, practices, customs, patterns of conduct and procedure, and for failure to train and/or supervise; and (III) violation of Mo. Rev. Stat. § 537.080 for wrongful death against the Board and Officer Thompson.

On October 2, 2017, Defendants filed a motion for summary judgment on each of Plaintiffs' Counts I, II, and III, asserting, as respectively applicable to each defendant, sovereign immunity, official immunity, and/or qualified immunity. On February 9, 2018, the Court granted summary judgment for Defendants on Count II for violation of § 1983, and for the Board on Count III for wrongful death. (Doc. #160). The Court otherwise denied Defendants' motion, thus denying Officer Thompson's motion for summary judgment on the basis of qualified immunity with respect to Count I against him for excessive force in violation of § 1983, and Officer Thompson's motion for summary judgment on the basis of official immunity with respect to Count III for wrongful death in violation of Mo. Rev. Stat. § 537.080.

---

[2] KCPD Police Chief Richard Smith is substituted for Darryl Forte in his official capacity. Fed. R. Civ. P. 25(d).

Officer Thompson appealed the Court's denial of summary judgment with respect to Plaintiffs' Counts I and III against him. (Doc. #161). Thereafter, this Court stayed this case, pending resolution of Officer Thompson's appeal. On August 12, 2019, the Eighth Circuit entered its judgment and opinion vacating this Court's denial of Defendants' motion for summary judgment with respect to Officer Thompson. The Eighth Circuit vacated the summary judgment order, and remanded to the district court for reconsideration consistent with the Eighth Circuit opinion. (Doc. #168). On September 5, 2019, the Eighth Circuit issued its mandate. (Doc. #169).

The Eighth Circuit's opinion sets forth the following:

> While on patrol early one morning, Thompson and his partner received a radio message that other officers were pursuing two men suspected of theft. Just seconds later, Thompson spotted Stokes, who matched the description of one of the suspects, running into a parking lot. Stokes headed toward the driver's side of a parked car and briefly opened the door. He then quickly turned and moved in the direction of the pursuing officer, who by that point was 'very close' to him. Thompson fired at Stokes three times, hitting him twice in the back. Stokes died shortly thereafter.
>
> Beyond these basic facts, the parties' accounts differ. Thompson claims that he saw Stokes with a gun when he entered the parking lot and believed that he intended to ambush the pursuing officer. Stokes's family argues that Stokes never possessed a gun and was attempting to surrender when he was shot. The parties also dispute whether Thompson said anything to Stokes before firing.
>
> Some evidence supports Thompson's account. The police discovered a handgun on the driver's seat of the car, which could mean that Stokes was armed when he entered the parking lot but then tossed the gun into the car. And witnesses who saw Stokes running said that he appeared to be 'holding up his pants as he ran,' which is arguably consistent with Thompson's perception that Stokes was holding a gun. Finally, Thompson's partner claims to have heard Thompson order Stokes to 'get on the ground.'
>
> Other evidence supports [Plaintiffs'] account. No one besides Thompson observed Stokes with a gun, nor was any gun found on or near his body. The car's owner, who was Stokes's friend, claimed that the gun recovered from the car belonged to him and that it had been there all night. Moreover, some officers did not recall hearing Thompson shout anything during the encounter, and at least one officer thought Stokes was trying to surrender when Thompson shot him.

3

(Doc. #168-1 at 2-3).

The Eighth Circuit found "the district court fell short of its threshold duty to make 'a thorough determination of Thompson's claim of qualified immunity," and improperly relied on a general right to be free from excessive force. (Doc. #168-1 at 3). The Eighth Circuit also stated the district court erred in at least two other ways: (1) mistakenly stating the qualified immunity analysis requires the Court to first determine whether the officer's actions amounted to a constitutional violation before it could address whether the underlying right was clearly established; and (2) suggesting that Stokes' subjective belief that he was not fleeing from the officers had some bearing on the qualified-immunity analysis. (Doc. #168-1 at 4). The Eighth Circuit directed this Court on remand to

> begin by specifically identifying the plaintiff-friendly version of the disputed facts, rather than, as it did before, simply reciting the parties' general allegations . . . . It must then evaluate whether Thompson, in light of all the information available to him at the moment, violated clearly established law when he shot Stokes. Only if the answer is 'yes' may the court once against deny qualified immunity.

(Doc. #168-1 at 4).

The Eighth Circuit also remanded the summary judgment decision for reconsideration on the issue of whether Officer Thompson is entitled to official immunity on Count III. The Eighth Circuit directed the district court to undertake more than a cursory analysis of whether Officer Thompson was entitled to official immunity.

**UNCONTROVERTED MATERIAL FACTS**

Officer Thompson is a KCPD police officer, employed by the Board, who has been a KCPD officer for more than 20 years. In the early morning hours of July 28, 2013, Officer Thompson and his partner Officer Tamara Jones were on foot patrol in the parking lot located at McGee and 12th Streets in Kansas City, Missouri. Officers Thompson and Jones were assigned to

4

Case 4:16-cv-00843-BCW   Document 177   Filed 02/11/20   Page 4 of 15

clear the lower parking lot along the west side of Grand Boulevard between 12th and 13th Streets. Eventually, Officers Thompson and Jones moved to the upper level of the parking lot where the shooting at issue occurred.

Over dispatch radio, Officer Thompson heard from Officer Albert Villafain that a foot chase was headed in his direction. Officer Thompson heard the description of two suspects (black males wearing white T-shirts and shorts), the direction of the two suspects' travel, and the crime that had allegedly been committed, which was stealing. Seconds after Officer Thompson heard this information over the radio, he saw a black male, wearing a white T-shirt, come running around the corner of a building in the parking lot. This individual was Ryan Stokes.

At the time of the incident, Stokes held his right hand closed, in front of himself, at waist level. Stokes jogged in Officer Thompson's direction, toward a red Monte Carlo that was parked just past the corner of the building in the parking lot. Stokes held his hands and arms close to his body as he ran, with his elbows bent, stationary, and close to his body.

Officer Thompson testified he saw a gun in Stokes' right hand, and Stokes looked at Officer Thompson and knew of his presence. Officer Jones testified she did not see Stokes with a gun, but she did not see Stokes' hands. Liberty, Missouri Police Officer Greg Powell testified he did not see a gun in Stokes' hand, but it was dark, and he could not see Stokes' hands. KCPD Officer Gregory Williams testified he did not see Stokes with a gun or anything that would have appeared as a gun. KCPD Officer Straub testified he did not see Stokes with a gun, but he also did not see Stokes' hands. Other witnesses testified Stokes was holding up his pants. Other witnesses testified they did not see Stokes with a gun at any point earlier that evening, including immediately before Officer Thompson saw Stokes.

Officer Thompson pointed a gun at Stokes as Stokes ran to the driver's side door of the Monte Carlo. Stokes' back was to Officer Thompson, at which point Officer Thompson could not see Stokes' hands. Stokes stepped away from the door of the vehicle. In his peripheral vision, Officer Thompson saw another police officer running around the same corner of the building around which Stokes had run. Stokes ran in the direction of the approaching officer, Officer Straub. Officer Straub saw Stokes stepping away from the Monte Carlo, and believed Stokes was obeying Officer Straub's commands to stop running and show Officer Straub his hands.

As Stokes moved away from the Monte Carlo, his back was to Officer Thompson, who could not see Stokes' right hand. However, Officer Thompson believed Stokes was armed and intended to ambush and shoot Officer Straub.

Officer Thompson shot Stokes from behind, and saw Stokes fall to the ground. Officer Thompson stopped shooting once he saw Stokes falling. About seven to ten seconds elapsed between when Officer Thompson saw Stokes and when Officer Thompson shot Stokes. Stokes was unarmed at the time of the shooting.

Thereafter, a gun was discovered on the driver's seat of the Monte Carlo. The gun belonged to Stokes' friend and owner of the Monte Carlo, Ollie Outley.

## LEGAL STANDARD

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party who moves for summary judgment bears the burden to establish that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

When considering a motion for summary judgment, the court evaluates the evidence in the light most favorable to the nonmoving party and the nonmoving party is entitled to "the benefit of all reasonable inferences." Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991); White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008).

## ANALYSIS

Consistent with the Eighth Circuit's direction, this Court "begin[s] by specifically identifying the plaintiff-friendly version of the disputed facts." As identified by the Eighth Circuit opinion, the following facts are either not in dispute, or support Plaintiffs' position that Officer Thompson is not entitled to immunity under the circumstances: (i) while on early morning patrol, Officer Thompson and his partner heard a radio message that other officers were pursuit two men suspected of theft; (ii) seconds after Officer Thompson heard the message, he saw Stokes, who matched the description of one of the suspects, running into a parking lot; (iii) Stokes moved toward the driver's side of a parked car and briefly opened the door; (iv) Stokes quickly turned and moved in the direction of the officer pursuing him who was, at that point, very close by; (v) Officer Thompson fired at Stokes three times, hitting him twice in the back, leading to Stokes' death; (iv) Officer Thompson is the only one who observed Stokes with a gun; (v) no gun was found on or near Stokes' body; (vi) the gun recovered from the front seat of the vehicle belonged to Outley, who also owned the car, and the gun had been in the vehicle all night; (vii) Officer Thompson may not have given Stokes verbal commands during the encounter; and (viii) at least one officer on the scene thought Stokes was attempting to surrender when he turned back toward the pursuing officer before Officer Thompson shot him.

7

Case 4:16-cv-00843-BCW    Document 177    Filed 02/11/20    Page 7 of 15

### A. Officer Thompson is entitled to qualified immunity on Count I.

In Count I, Plaintiffs allege a claim against Officer Thompson for excessive force under 42 U.S.C. § 1983. Defendants assert Officer Thompson is entitled to summary judgment on Plaintiffs' excessive force claim based on qualified immunity.

In the remand opinion, the Eighth Circuit set forth the issue as follows: "whether Thompson, in light of all the information available to him at the moment, violated clearly established law when he shot Stokes. Only if the answer is 'yes' may the court once against deny qualified immunity." (Doc. #168-1 at 3).

Title 42 U.S.C. § "1983 provides a cause of action against government officials who deprive persons of rights, privileges, or immunities secured by the Constitution." Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007) (citing 42 U.S.C. § 1983). The doctrine of "[q]ualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Estate of Morgan v. Cook, 686 F.3d 494, 496 (8th Cir. 2012) (citing Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009)).

A district court considering a motion for summary judgment asserting qualified immunity should make a "thorough determination" of two analytical prongs: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Robbins v. Becker, 715 F.3d 691, 694-95 (8th Cir. 2013); Morgan, 686 F.3d at 496. The court need not consider these two questions in a particular order; rather, the court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Boude v. City of Raymore, Mo., 855 F.3d 930, 933 (8th Cir. 2017) (citing Pearson

v. Callahan, 555 U.S. 223, 236 (2009)). A government official performing discretionary functions is entitled to qualified immunity unless the answer to both prongs is "yes." Harlow v. Fitzgerald, 457 U.S. 800, 812 (1982).

### 1. No constitutional violation occurred.

"Under the Fourth Amendment, police officers are liable for excessive force that is not objectively reasonable under the circumstances." Boude, 855 F.3d at 933 (citing Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009). As set forth by Defendants, "[s]hooting a suspect is a seizure under the Fourth Amendment, so the question is whether doing so was objectively reasonable under the circumstances." (Doc. #135 at 10) (citing Morgan, 686 F.3d at 496-97 (8th Cir. 2012)). In assessing whether Officer Thompson's use of force was objectively reasonable, the Court considers "the facts and circumstances confronting [Officer Thompson], without regard to [Officer Thompson's] underlying intent or motivation." Morgan, 686 F.3d at 497 (citing Nance v. Sammis, 586 F.3d 604, 610 (8th Cir. 2009)).

Whether an officer's use of force was reasonable depends on "the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade by flight." Id. "The use of deadly force is not constitutionally unreasonable if an officer has probable cause to believe that the suspect poses a threat of serious harm, either to the officer or others," even if the objectively reasonable belief or perception of the threat turns out to be objectively unreasonable. Morgan, 686 F.3d at 497; Billingsley v. City of Omaha, 277 F.3d 990, 995 (8th Cir. 2002).

However, when, under the totality of the circumstances, it is not objectively reasonable for an officer to believe a suspect poses an immediate threat, "deadly force is not justified." Raines v.

Counseling Assocs., Inc., 883 F.3d 1071, 1074 (8th Cir. 2018). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. Graham v. Connor, 490 U.S. 386, 396-97 (1989).

The Eighth Circuit has identified the following factors as relevant to determine whether an officer's use of force is objectively reasonable: (a) the relationship between the need of force and the amount of force used; (b) the extent of the injury; (c) any effort made to limit the amount of force; (d) the severity of the security problem at issue; (e) the threat reasonably perceived by the officer; and (f) whether the plaintiff was actively resisting. Zubrod v. Hoch, 907 F.3d 568, 577 (8th Cir. 2018).

In this case, with all reasonable factual inferences drawn in Plaintiffs' favor, Officer Thompson was the only witness who observed Stokes with a gun in his hand. Officer Thompson saw Stokes failing to obey Officer Thompson's commands and, when he saw Stokes move away from the Monte Carlo and turn toward Officer Straub and the other pursuing officers, Officer Thompson did not again see Stokes' hands, or have any reason to think Stokes no longer held a gun at his waist. Officer Thompson also testified he observed Stokes by the vehicle's driver's side door, and the car door open and close.[3] Officer Thompson observed Stokes to be a threat because he initially had a gun and considered Stokes' movement toward the front of the Monte Carlo to be an act of aggression because Stokes was not obeying Officer Thompson's commands. The circumstances of this case demonstrate Officer Thompson observed Stokes with a gun, and saw Stokes engaged in "[m]aximum resistance" through his failure to follow verbal commands and continuing to run away.

---

[3] The Court notes Defendants' motion for summary judgment does not state, as an uncontroverted material fact, that the door to the Monte Carlo was opened or closed at any point during this incident

10

Under the applicable factors to determine objective reasonableness, Officer Thompson believed Stokes was armed and turned to ambush the pursuing officers, and Officer Thompson discharged his weapon to protect the approaching officers. The extent of the injury in this case is a fatality. There is at least some record evidence to suggest Officer Thompson gave Officer Thompson commands to drop the weapon and show his hands in the moments before Officer Thompson discharged his weapon. The crime at issue was stealing, with no other indication, beyond Officer Thompson's observation, that a weapon was involved. Officer Thompson perceived Stokes' turn away from the Monte Carlo as conduct indicating an attempt to fight or shoot at the officers in pursuit, although Officer Straub perceived Stokes' turn away from the vehicle as an attempt to surrender and comply with commands. Finally, Officer Thompson observed Stokes as active resistance in Stokes' failure to follow officer commands. Zubrod, 907 F.3d at 577.

Based on the application of these factors, the Court concludes Officer Thompson's use of deadly force was reasonable, even though at the time of the shooting, Stokes was not in fact armed. Morgan, 686 F.3d at 497; Billingsley, 277 F.3d at 995 (use of deadly force is not constitutionally unreasonable even if the officer's reasonable perception of threat turns out to be objectively unreasonable). Consequently, the record does not demonstrate the violation of a constitutional right, and Officer Thompson is thus entitled to qualified immunity on Count I.

### 2. The right at issue was not clearly established.

Though the conclusion on the "violation of a constitutional right" prong entitles Officer Thompson to qualified immunity, the Court also analyzes the "clearly established" prong.

A constitutional right is clearly established if it has contours "sufficiently clear that a reasonable official would understand that what he or she is doing violates that right." Atkinson v.

City of Mountain View, Mo., 709 F.3d 1201, 1211 (8th Cir. 2013). For an officer to have violated a clearly established right, the illegality of that conduct must be "beyond debate." Aschcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011). "At least since Garner was decided, officers have been on notice that they may not use deadly force unless the suspect poses a significant threat of death or serious physical injury to the officer or others." Wealot v. Brooks, 865 F.3d 1119, 1125 (8th Cir. 2016) (citing Craighead v. Lee, 399 F.3d 954, 962 (8th Cir. 2005) (citing Tennessee v. Garner, 471 U.S. 1, 11 (1985)).

"The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Hernandez v. Mesa, 137 S. Ct. 2003, 2007 (2017) (citing Saucier v. Katz, 533 U.S. 194, 202 (2001)). Stated differently, a constitutional right is clearly established if a reasonable officer would have known that his conduct was unlawful. Rohrbough v. Hall, 586 F.3d 582, 585 (8th Cir. 2009). "The qualified immunity analysis thus is limited to 'the facts that were knowable to the defendant officers at the time they engaged in the conduct in question.'" Hernandez, 137 S. Ct. at 2007 (citing White v. Pauly, 137 S. Ct. 548, 550 (2017)). "Facts an officer learns after the incident ends – whether those facts would support granting immunity or denying it – are not relevant." Hernandez, 137 S. Ct. at 2007.

In this case, with all reasonable factual inferences drawn in Plaintiffs' favor, Officer Thompson discharged his weapon as Stokes turned away from the Monte Carlo toward pursuing officers to prevent Stokes from ambushing the pursuing officers with the gun Officer Thompson believed Stokes had in his right hand. Although no other witness testified to seeing Stokes with a gun, and the radio call did not mention a weapon, and Officer Straub believed Stokes was surrendering when he turned back toward the pursuing officers, Officer Thompson believed he

12

saw Stokes was carrying a gun and observed Stokes failing to comply with Officer Thompson's commands. The fact that Stokes was not, in reality, holding a gun when Officer Thompson shot him is not relevant. Hernandez, 137 S. Ct. at 2007. Under these circumstances, Officer Thompson relied on his observations to conclude Stokes posed a threat of death or serious physical injury to other officers such that Officer Thompson's use of deadly force cannot be said to violate a clearly established constitutional right of which a reasonable officer would have known. Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (citing Brosseau v. Haugen, 543 U.S. 194, 198 (2004)).

For these reasons, the Court grants summary judgment in Officer Thompson's favor on Count I based on qualified immunity.

**B. Officer Thompson is entitled to official immunity on Count III.**

Plaintiffs' Count III alleges violation of Mo. Rev. Stat. § 537.080, which is Missouri's wrongful death statute. Defendants argue Officer Thompson is entitled to summary judgment on Count III based on official immunity.

"Missouri's doctrine of official immunity applies to wrongful death claims under Missouri law." Wealot v. Brooks, 865 F.3d 1119, 1128-9 (8th Cir. 2017) (citing Seiner v. Drenon, 304 F.3d 810, 813 (8th Cir. 2002)). Under this official immunity doctrine, public employees are protected "from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." Wealot, 865 F.3d at 1129 (Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008)).

"Police officers are not liable for negligent acts that are related to discretionary functions." Wealot, 865 F.3d at 1129 (citing Blue v. Harrah's N. Kan. City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005)). "The use of force is a discretionary duty." Id. (citations omitted). However, the official immunity doctrine "does not apply to discretionary acts done in bad faith or with malice."

13

Id. (citing Blue, 170 S.W.3d at 479). In this context, "bad faith" means "more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." Wealot, 865 F.3d at 1129 (citing State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. 1986)). "Malice" means "conduct which is so reckless or wantonly and willfully in disregard of one's rights that a trier of fact could infer from such conduct bad faith or any improper or wrongful motive." Wealot, 865 F.3d at 1129 (citing Twiehaus, 706 S.W.2d at 447 ("A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.")).

"In Missouri, a bad-faith allegation survives summary judgment if a plaintiff states facts from which it could reasonably be inferred that [the defendant] acted in bad faith or from an improper or wrongful motive." Boude v. City of Raymore, 855 F.3d 930, 935 (8th Cir. 2017).

In this case, Officer Thompson testified he saw a gun in Stokes right hand, and other witnesses saw Stokes holding his hands and arms close to his body. Further, the entirety of the incident occurred over a time period of not more than ten seconds. Even with all reasonable factual inferences in Plaintiffs' favor, there is no basis in the record to support that Officer Thompson's use of force was more than bad judgment, negligence, and/or recklessly, wantonly, or willfully in disregard of Stokes' rights. Wealot, 865 F.3d at 1129. Plaintiffs have demonstrated no facts from which the reasonable conclusion might be drawn that Officer Thompson discharged his weapon pursuant to any malice or bad faith. To the contrary, the uncontroverted facts demonstrate Officer Thompson's use of force against Stokes was in response to the circumstances presented at the scene as Officer Thompson perceived them: (a) the incident was ten seconds in duration; (b) Stokes had a gun; and (c) Stokes turned toward Officer Straub. Consequently, even though Officer

14

Thompson was mistaken that Stokes had a gun as he turned to face Officer Straub, Officer Thompson's use of force, which falls within his discretion, amounts to no more than a negligent act in the course of his official duties and Officer Thompson is entitled to official immunity. Defendants' motion for summary judgment on Count III is granted. Accordingly, it is hereby

ORDERED Defendants' motion for summary judgment (Doc. #135) is GRANTED. Officer Thompson is entitled to summary judgment on Count I based on qualified immunity and Count III based on official immunity.

IT IS SO ORDERED.

DATED: February 11, 2020

/s/ Brian C. Wimes
JUDGE BRIAN C. WIMES
UNITED STATES DISTRICT COURT